IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CANDIE MARIE CALIX,<br>   a.k.a. "Nicole Thomas," a.k.a. "Nikki Calix,"<br>   a.k.a. "Candie Kendall," a.k.a. "Summer Angel,"<br><br>   *Defendant.* | Case No. 1:22-CR-115 |

## STATEMENT OF FACTS

The United States and the defendant, Candie Calix, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1.    From in and around 2013 through in and around April 2022, in the Eastern District of Virginia and elsewhere, the defendant, Candie Calix, did knowingly, intentionally, and unlawfully conspire with K.S., J.T., and others to knowingly and intentionally distribute oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2.    During the course and in furtherance of these offenses, the defendant personally distributed the equivalent of at least 3,000 kilograms but less than 10,000 kilograms of Converted Drug Weight.

3.    During the time relevant to the criminal information, the defendant was a patient of and nominally worked as an office manager for a physician ("Doctor-1") who operated a medical practice out of her home in Arlington, Virginia. Nevertheless, between in and around October

2012 and March 2022, Doctor-1 prescribed the defendant a total of 39,768 oxycodone 30-mg pills, and 9,296 oxycodone 15-mg pills. During this same time frame, Doctor-1 prescribed significant quantities of oxycodone and other controlled substances to the defendant's relatives, including her mother, grandparents, great-grandmother, brother, and husband.

4. For example, Doctor-1 wrote the following prescriptions, all of which were filled at a pharmacy in Falls Church, Virginia, on or about November 4, 2019:

   a. The defendant: 200 oxycodone 30-mg pills

   b. The defendant's grandfather: 200 oxycodone 30-mg pills

   c. The defendant's grandmother: 180 oxycodone 30-mg pills

   d. The defendant's mother: 180 oxycodone 30-mg pills and 180 15-mg pills

5. Doctor-1 also wrote a prescription for 200 oxycodone 30-mg pills for the defendant's husband, which was filled one week later, on or about November 11, 2019. Doctor-1 further wrote the following prescriptions that were filled four days after that, on or about November 15, 2019:

   a. The defendant: 160 oxycodone 30-mg pills

   b. The defendant's grandfather: 160 oxycodone 30-mg pills

   c. The defendant's great-grandmother: 180 oxycodone 15-mg pills

6. These quantities were far in excess of therapeutic doses, and the defendant personally distributed, or directed others to distribute, most of the pills prescribed by Doctor-1 to herself and her family members.

7. As part of the conspiracy as charged in the criminal information, the defendant acted as gatekeeper to Doctor-1. She referred family members and other individuals she knew from the area around Front Royal, Virginia, to be "patients" of Doctor-1, and she scheduled

appointments for the "patients" to obtain oxycodone. Some of the patients the defendant recruited were K.S., J.T., C.T., M.T., H.H., H.M., J.B., T.S., L.B., S.S., S.H., and J.H.

8. Doctor-1 prescribed each "patient" large quantities of oxycodone 30-mg and 15-mg tablets. Typically, in exchange for getting the "patient" in to see Doctor-1, the defendant confiscated the patient's oxycodone 30-mg pills to sell, and the patient kept the oxycodone 15-mg pills for their own personal use. The defendant also used others, including K.S. and J.T., to sell oxycodone pills at her direction.

9. For example, in and around 2013, the defendant arranged for J.T. to become a patient of Doctor-1. In 2013, Doctor-1 prescribed J.T. large quantities of oxycodone 30-mg pills. Then, in 2014, Doctor-1 prescribed J.T. exclusively oxycodone 15-mg pills. Beginning in 2015, and continuing to 2020, J.T. was prescribed as many as 210 oxycodone 30-mg pills and 210 oxycodone 15-mg pills every month by Doctor-1. Per the arrangement with the defendant, J.T. kept the oxycodone 15-mg pills each month for herself, but gave the entire monthly prescription of oxycodone 30-mg pills to the defendant to redistribute.

10. During this period, J.T. also sold oxycodone pills on the defendant's behalf. The defendant typically "fronted" the oxycodone pills to J.T., who sold the pills and returned the cash from sales to the defendant. The defendant also paid J.T. in pills for redistributing oxycodone on her behalf.

11. The defendant and her co-conspirators sold oxycodone 30-mg pills at an average cost of about $25 per pill. The amount of money generated by the conspiracy between approximately 2013 and 2022 was not less than approximately $5,000 per month.

12. The defendant and her co-conspirators used coded language to refer to the pills they distributed. The defendant and K.S. referred to oxycodone 30-mg pills as "tickets," "blueberries,"

or "muffins." The defendant referred to oxycodone 15-mg pills as "beans" and methadone 10-mg pills as "donuts."

13. The defendant and some of her relatives resided primarily on a family property in Front Royal, Virginia. On April 7, 2022, law enforcement executed a search warrant on the family property. At the property, law enforcement seized more than one thousand oxycodone 30-mg pills and methadone pills kept in at least two different locked safes on the property. The pills were held in prescription bottles bearing the names of the defendant, different members of her family and other "patients" of Doctor-1. Additionally, law enforcement seized approximately $3,400 in U.S. currency.

14. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

15. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

16. If the defendant breaches the plea agreement, then pursuant to the plea agreement, she waives any rights under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the Unite States Constitution, and any federal statute or rule in objecting to the admissibility of the statement of facts in any such proceeding.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Katherine E. Rumbaugh
Assistant United States Attorney

**Defendant's signature:** After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Candie Calix, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial the United States would have proved the same beyond a reasonable doubt.

Date: 6-17-22

_____
Candie Marie Calix
Defendant

**Defense counsel signature:** I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

Date: 6-17-22

_____
Brittany M. Davidson, Esq.
Counsel for the Defendant